FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 16, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THOMAS WILLIAM SINCLAIR RICHEY,<br><br>    Plaintiff,<br><br>    v.<br><br>GRIEVANCE COORDINATOR B. DUNCAN, et al.,<br><br>    Defendants. | No. 2:23-CV-00050-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 24, and Defendants' Motion for Summary Judgment, ECF No. 55. The motions were heard without oral argument. Plaintiff is representing himself in this matter. Defendants are represented by Aaron Williams and Alicia Mac.

**Motion Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~1

If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## Underlying Facts

In 1987, Plaintiff, a state prisoner currently housed at Airway Heights Corrections Center, was sentenced to 65 years imprisonment. While in custody on the west side of the state, Plaintiff filed over 20 actions in the Western District of Washington. Lately, the focus of Plaintiff's actions has been the First Amendment.[1] Plaintiff files grievances using disrespectful language to describe

---

[1] In 2012, Plaintiff brought a § 1983 action in the Western District of Washington against prison officials at Monroe Corrections Center because his grievance about a prison guard was administratively withdrawn after he refused to remove rude comments about the prison guard's weight *Richey v. Dahne*, 3:12-CV-05060-BHS, (W.D. Wash 2012). After extensive motion practice, Judge Settle denied the defendants' request for immunity on the First Amendment right to petition the

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~2**

prison staff. Usually, he is asked to rewrite the grievance, and when he refuses, the prison either rejects or processes the grievance. It has been suggested that Plaintiff has engineered these lawsuits in search of "a nice payday." *Richey v. Stemler*, 2020 WL 8370941, *3-4 (W.D. Wash. 2020) (Report and Recommendation of Magistrate Judge Mary Theiler).

At some point, Plaintiff was transferred to Eastern Washington, being housed at the Washington State Penitentiary in Walla Walla, Washington and Airway Heights Corrections Center (AHCC) in Airway Heights, Washington. He has continued to file lawsuits—many of which have been dismissed for failure to comply with the filing fee and more than one alleging that his First Amendment rights were violated when he used derogatory language when filing grievances.[2]

Plaintiff filed this instant action on February 22, 2023. This current action follows the First Amendment line of claims where Plaintiff submitted grievances

---

government because a reasonable officer would know that either rejecting or withdrawing a grievance because it included offensive language was a constitutional violation and denied their request for immunity with respect to the retaliation claims because questions of material fact existed. ECF No. 74. The State appealed that decision and in 2018, the Ninth Circuit issued an unpublished opinion where it held that in the special context of prison grievances, prison rules prohibiting disrespectful language do not serve a legitimate penological interest, as would be required for the rules to be constitutional. *Richey v. Dahne*, 733 Fed. Appx. 881 (9th Cir. 2018)

[2] *See e.g., Richey v. Sinclair, et al.*, 2:21-CV-00107-RMP; *Richey v. Duncan*, 2:23-CV-00018-RMP; 4:16-CV-05047-RMP. As the court noted in R*ichey v. Pease,* 2:15-CV-5097-RMP, a review of court records from the U.S. District Courts in the Eastern and Western Districts of Washington showed that by 2015, Plaintiff had filed more than thirty civil cases.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~3**

or resolution requests in which he uses questionable language to describe prison staff. In this case, Plaintiff submitted three grievances that included questionable language.

**Log ID No. 22767657**

On November 8, 2022, Plaintiff submitted a written grievance LOG ID No. 22767657, in which he complained about retaliation from prison staff. He described a guard as "the fat tub of lard wearing sergeant stripes and his mini me, the bearded lady, C/O Marcus." Plaintiff was directed to rewrite his written grievance, remove the abusive language, and return it by November 30, 2022. He submitted a rewrite, and in it stated:

> I'm not rewriting a goddamn thing. File my grievance as I wrote it. Don't try to control and censor my language. My grievance complaint is detailed and properly written. Do your fucking job and file and investigate my grievance as written.

Defendant B. Duncan, Grievance Coordinator/Resolution Specialist, requested that Plaintiff submit a rewrite of the rewrite to remove the profane, derogatory and/or abusive language. Richey refused to rewrite the resolution request. When Plaintiff refused to rewrite his resolution request a second time, it was accepted and processed as written.

On December 14, 2022, Defendant Duncan submitted an infraction against Plaintiff for violating WAC 137-25-020(896). This infraction, IGN 103, was for abusive language contained in Plaintiff's Resolution Request with LOG ID No. 22767657.

On January 18, 2023, CC3 Lightbody reviewed grievance No. 22767657. Lightbody concluded that based on the information obtained, the staff processed his grievance correctly. Lightbody noted that custody staff and CI staff attempted to resolve the issue at the lowest level by replacing Plaintiff's meal and apologizing, but Plaintiff refused to accept any resolution. Lightbody concluded

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~4**

the grievance was unfounded.

### Log ID No. 22769710

On December 6, 2022, Plaintiff filed a grievance against Greg Waldo, Records Specialist, asserting that because Plaintiff "mistakenly addressed" Waldo as "Gay Waldo," Waldo became emotional disturbed and refused to provide a copy of the requested verification document. He also wrote that "Greg Waldo must privately have gay tendencies, since he acts so distraught and insecure when a mistake is made about his name." This grievance was assigned Log ID No. 22769710.

Defendant Funnemark directed Plaintiff to rewrite this grievance because of the abusive language. Plaintiff refused. On December 23, 2022, he wrote:

> I refuse to rewrite by grievance to censor my language so process grievance as written. That's your only option here. STOP RETURNING MY GRIEVANCES. I did not include abusive language and so what are you talking about?

It was processed, but Defendant Funnemark did not accept the Resolution Request.

On January 6, 2023, Defendant Duncan wrote an infraction for Richey for violating WAC 137-25-020(896). This infraction, IGN 104, was for abusive language contained in Plaintiff's Resolution Request with LOG ID No. 22769710.

### Log ID No. 23770936

On December 30, 2022, Plaintiff submitted grievance No. 23770936. Plaintiff wrote:

> I want to grieve the Moron, CS2 Duncan for retaliating against me by refusing to process by properly filed grievances and for retaliating against me by writing an infraction for exercising my protected 1st Amendment rights. You need to hire people to fill positions who are competent and understand the law and the rights of grievants and the parameters of the grievance rules. Duncan is unsuitable for the job of grievance coordinator because he is obviously cerebrally challenged.

He asked that Duncan be replaced with "a person of higher intellect."

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~5**

On December 30, 2022, he submitted additional documents. In it he wrote:

> Duncan . . . retaliated by writing a serious infraction report, violation #896, because of language I used in my grievance. . . Duncan needs to fully understand the rights of prisoners and exercise his duties as a grievance coordinator instead of acting like an emotionally distraught child basing reactionary decisions on emotions is immature handicap for anyone in a supervisory position.

He asked that Duncan be relieved of her duties, and someone be hired that was mature enough to remove their emotions from their decision-making process.

Defendant Funnemark responded:

> Individuals cannot submit a Resolution Request on concerns that have a Department approved formal review and/or appeals process. Individuals are directed to follow the correct review/appeals process to resolve those concerns or allow the review process to take place. This includes, but is not limited to: Infractions/sanctions/disciplinary hearing actions or employees/contract staff involved in the proceeding, as they can be adjudicate through the disciplinary process in accordance with WAC.

On January 3, 2023, J. Funnemark wrote an infraction for Plaintiff for violating WAC 137-25-020(896) in filing Resolution Request ID No. 23770936, that contained abusive and offensive comments. This infraction, IGN 105, was for violating WAC 895 Discriminatory Harassment.

**Disciplinary Hearing Related to IGN 103, 104 and 105.**

On January 9, 2023, a disciplinary hearing was conducted by Defendant Donna Byrnes. Plaintiff asked for a continuance, which was granted. On February 16, 2023, a disciplinary hearing was held for the Infraction Report 104 and 105. It appears that Plaintiff participated in this hearing. Defendant Byrnes found Plaintiff not guilty of IGN 104 and 105.

With respect to IGN 104, Defendant Byrnes made the following findings:

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~6**

> Written staff testimony that offender made harassing, abusive, and offensive comments directed at staff pertaining to sexual orientation and continued to do so after his behavior being addressed by staff. Documentation submitted through the Grievance process cannot be used against the offender and is protected and the right of the offender to not be infracted because it included vulgar and offensive language. Physical evidence presented. Offender documentation attached.

ECF No. 51, Ex. 2.

With respect to IGN 105, Defendant Byrnes made the following findings:

> Written staff testimony that offender made offense comments directed at staff pertaining to emotional handicap/disabilities. Physical evidence presented; Documentation submitted through the Grievance process cannot be used against the offender and is protected and the rights of the offender to not be infracted because of his grievance includes vulgar and offensive comments.

ECF No. 51, Ex. 3.

With respect to IGN 103, a hearing was held on March 10, 2023. It does not appear that Plaintiff participated. Defendant Byrnes reduced the serious violation of WAC 137-25-020 (896) and instead found Plaintiff guilty of a violation of WAC 137-28-220(202).[3] ECF No. 51, Ex. 1. Defendant Byrnes appeared to rely on written staff testimony that Plaintiff made offensive comments directed at staff pertaining to sexual orientation. She sanctioned Plaintiff to 7 days CC and 40 hours of extra duty. The reasons for the sanction were because this was Plaintiff's second 202 infraction in the past 12 months and the seriousness of the incident.

Since Plaintiff received his serious infraction, he states he has not filed any additional grievances because he is fearful of being infracted.

---

[3] (1) Any of the following types of behavior may constitute a general violation . . . Disruptive behavior/lying

  202- Harassing, using abusive language, or engaging in other offensive behavior directed to or in the presence of another person(s) or group(s).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~7**

### Legal Standards

#### A.     42 U.S.C. § 1983

In order to establish a claim under § 1983, Plaintiff must show that (1) he suffered a violation of rights protected by the Constitution or created by federal statute; and (2) the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### B.     Petition for Redress of Grievances

A prison regulation that restricts an inmate's constitutional rights is constitutional if it is "reasonably related to legitimate penological interest." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The *Turner* Court set forth four factors a court must consider whether prisoners allege that a regulation or practice impinges on their First Amendment rights: (1) whether there is a rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) what impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether ready alternatives at a de minimis costs exist which may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns. *Id.* at 89-93 (quotation omitted).

Under Ninth Circuit precedent, "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). Thus, absent a legitimate penological reason, content-based limitations on a prisoner's expression are unconstitutional. *Id.* As explained by the Circuit, while the prison has a legitimate penological interest in encouraging respect by inmates toward staff and other inmates, and rehabilitation of inmates through insistence on their use of socially acceptable ways of solving their problems, the link between this purpose and the disrespect rules as applied to formal written grievances is weak. *Id.* This is so because grievances can be

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~8**

insulated from other prisoners and from those prison officials who are the target of the grievance, so that disrespectful language in a grievance does not raise any substantial security concern. *Id.* "A prisoner's statement in a grievance need not have any more impact on prison security through the maintenance of respect than the prisoner's unexpressed thoughts." *Id.* at 1273.

### C.  Retaliation for Exercising First Amendment Rights in Prison Setting

Prisoners have a First Amendment right to be free from retaliation for filing grievances against prison officials. *Watison v. Carter,* 668 F.3d 1108, 1114 (9th Cir. 2012). Retaliation against prisoners for their exercise of this right is itself a constitutional violation and prohibited as a matter of "clearly established law." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citation omitted).

A viable retaliation claim in the prison context has five basic elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Id.*

### D.  Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In determining whether a state official is entitled to qualified immunity in the context of summary judgment, we consider (1) whether the evidence viewed in the light most favorable to the plaintiff is sufficient to show a violation of a constitutional right and (2) whether that right was "clearly established at the time of the violation." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019) (citing *Pearson*, 555 U.S. at 232).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~9**

### Analysis

In analyzing Plaintiff's right to petition claim and the right again retaliation claim, the Court must determine whether the actions of the prison officials are reasonably related to legitimate penological interests. In *Brodheim*, the Ninth Circuit only looked at the penologically interest of the peaceable operation of the prison and determined that certain language contained in a written complaint did not pose a substantial threat to security and discipline, which was the penological interests proffered by prison officials. 584 F.3d at 1272-73.

In this case, Defendants present what they believe are legitimate penological interests for the restriction of abusive language that go beyond what was presented in *Brodheim*. James Key, Deputy Assistant Secretary of Prisons, Central Division of with Department of Corrections stated the following:

> 6. Rehabilitation is one of the most important reasons for these regulations. Individuals who become incarcerated often have difficulty dealing with interactions with others. Many of them have never had the opportunity in life to learn respectful discourse or the personal discipline to follow rules. Part of the goal of incarceration is to teach incarcerated people respectful and effective communication skills so that they may someday be able to participate in society. For instance, an individual would likely be terminated from any job where they said something in an email that is disrespectfully, harassing, and abusive toward others in the workplace. Permitting the use of this language in a prison grievance, therefore, undermines the Department's attempts to provide a structured environment where good coping skills and basic respectful communication skills are fostered and reinforced. In other words it hinders effective rehabilitation. This is not something that can be cured by simply having someone who is not the target of the grievance read it. Regardless of who reads the grievances, the behavior is negative and it is imperative that the Department be permitted to reinforce new habits of respectful behavior and to punish negative behavior as part of the rehabilitation process.
>
> 7. In addition, many incarcerated individuals ended up in prison because they lacked respect for rules in general and for authority figures. Respect for rules and being respectful of authority is not just a skill needed in prison, it is part of the life skills a person needs to function in everyday life outside

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~10

> of a prison as well. Allowing an incarcerated person to ignore prison rules when they file grievances and to use harassing and abusing language discourages respect for authority. This is also something that cannot be solved by having someone who is not the target of the harassment read the grievances.
>
> 8. Finally, these rules help to protect safety, security, and order within the prison by preventing confrontations. Corrections staff need to be able to maintain a high degree of self-control which can be undermined when incarcerated individuals bait them with insults. Confrontations can be caused by the use of abusive and harassing language. Staff morale also suffers as the result of being harassed in the workplace. It is imperative that order and calm be maintained and that confrontational situations be avoided in the prison setting. Prison should be a place of respectful interactions and it should be a safe environment for all. Confrontation can lead to violence. The reason of preventing confrontations too cannot be addressed simply by having someone who is not the target of the insults respond to the grievance. Prisoners often talk up their grievances to other incarcerated individuals so the contents of an offensive grievance can easily get around the prison. Incarcerated individuals also often file their grievances in court so it is not possible to always shield the targeted employees from these remarks.

ECF No. 57.

Mr. Key's testimony is based on thirty-six years of real-world experience. Notably, Mr. Key states that teaching incarcerated people effective communication is an important part of their rehabilitation. Plaintiff apparently agrees with this as well. *See* ECF No. 48-1. Mr. Key's testimony provides uncontroverted evidence that Defendant's actions in dealing with Plaintiff's grievances were reasonably related to legitimate penological reasons. As such, Plaintiff has not shown that the limitations placed on his speech set forth above rise to a constitutional violation because Defendants have legitimate penological reasons for limiting that speech.

Moreover, given the lack of prior precedent addressing the legitimate penological need to foster effective communication skills as part of a prisoner's rehabilitation, as well as the Circuit split identified by Defendants, the Court finds that Defendants are entitled to qualified immunity.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~11

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 24, is **DENIED.**

2. Defendants' Motion for Summary Judgment, ECF No. 55, is **GRANTED**.

3. The Clerk of Court is directed to enter judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED**. The Clerk of Court is hereby directed to file this Order, provide copies to Plaintiff and counsel, and close the file.

**DATED** this 16th day of July 2024.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~12